IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RICARDO MEDRANO,                    )
                                    )
           Plaintiff,               )
                                    )
v.                                  )              Civil Action No. 5:09-1305
                                    )
DAVID BERKEBILE, *et al.*,          )
                                    )
           Defendants.              )

PROPOSED FINDINGS AND RECOMMENDATION

On January 24, 2011, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Document Nos. 37 and 38.) Having examined the entire record, the undersigned has determined, and hereby respectfully recommends, that Defendants' Motion should be granted.

FACTUAL AND PROCEDURAL HISTORY

On December 4, 2009, Plaintiff, an inmate formerly incarcerated at FCI Beckley, located in Beckley, West Virginia, and acting *pro se*, filed his Complaint[1] in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971).[2] (Document No. 3.) Plaintiff also filed an Application to

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] As Plaintiff indicates in his Complaint (Document No. 3 - 1, pp. 3 - 7.), on May 18, 2009, Plaintiff filed a letter form complaint alleging that he was assaulted by two inmates at FCI Beckley and complaining that he was placed in administrative segregation for his protection. (*Medrano v. Berkebile*, Civil Action No. 5:09-0570, Document No. 2.) On August 4, 2009, Plaintiff filed a letter-form Motion to Withdraw and Dismiss Complaint. (*Id.*, Document No. 7.) Specifically, Plaintiff "requested this honorable court to dismiss this case without prejudice pursuant to Rule 41(a)(1)(B)

Proceed Without Prepayment of Fees and Costs. (Document No. 1.) Plaintiff named the following as Defendants in their official and individual capacities: (1) David Berkebile, Warden; (2) Mr. Nash, Acting Captain; (3) Jeff James, Correctional Officer in SHU; (4) Mr. Stocks, Correctional Officer in SHU; (5) Mr. Hamrick, Supervisor of Unit Managers; (6) Mr. Snow, Unit Manager; (7) Mr. Ray, Case Manager; (8) Mr. Wescott, Correctional Counsel; (9) John Doe, Acting SHU Lieutenant; and (10) Mr. Tencher, Correctional Officer in SHU. (Document No. 3-1, pp. 2 - 3 and 32 - 35.)[3] Plaintiff alleged that Defendants violated his constitutional rights under the First, Fifth, and Eighth Amendments.

Plaintiff complains that Defendants "did not provide adequate safety, which resulted in protective custody special housing unit section (SHU) being locked down 24 hours, 7-days a week for an untold period of time restricted of liberty of movement in FCI-Beckley." (Id., p. 8.) Plaintiff alleges that on June 9, 2009, Defendant James acted with deliberate indifference to his safety when he stated in response to Plaintiff's question about his meals "there is more food on compound mainline. What are you going to do, sue for your meal too, you scary dude?" insinuating to other inmates that Plaintiff was in protective custody potentially as a snitch or informant. (Id., p. 9.) Plaintiff further claims that Defendant James denied him meals "in retaliation for filing of civil rights suit." (Id.) Plaintiff argues that "prison officials disregarded specific known risks to inmate's

_____

until plaintiff has exhausted his complaint with the Prison Litigation Reform Action (P.L.R.A.)." (Id.) By Proposed Findings and Recommendation entered on August 21, 2009, the undersigned recommended that Plaintiff's Motion to Withdraw and Dismiss Complaint be granted. (Id., Document No. 8.) By Memorandum Opinion and Order entered on September 22, 2009, District Judge Thomas E. Johnston adopted the undersigned's recommendation and dismissed Plaintiff's Complaint without prejudice. (Id., Document Nos. 9 and 10.)

[3] Plaintiff alleges that Defendants Berkebile, Nash, Hamrick, Snow and SHU Lieutenant John Doe failed in their positions as supervisors. (Document No. 3-1, pp. 32 - 35.)

health and safety and analyzed under the deliberate indifference standard of the Eighth Amendment." (Id., p. 10 - 11.) Citing Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), Plaintiff asserts that "correctional officials Jeff James and Mr. Stocks, and Supervising Officials Lieutenant John Doe (SHU), Captain Mr. Nash, and Warden Berkebile, acted with a culpable state of mind." (Id., p. 11.)

Plaintiff further alleges that he was placed in lock down in administrative/protective segregation in the special housing unit [SHU] for a prolonged period of time (more than 200 days) and asserts that his confinement in SHU violated his right to due process and constituted cruel and unusual punishment in violation of the Eighth Amendment. (Id., pp. 12 - 22.) Plaintiff contends that his placement in SHU resulted in an "atypical or significant hardship" and "placement in a low security facility would drastically reduce assault and relieve mental anguish." (Id., p. 15.) Plaintiff complains that "he has been in administrative custody for over 6 months and has not been reviewed consistent with" 28 C.F.R. §§ 541.21, 541.22, and 541.23. (Id., pp. 19 - 22.) Plaintiff states that "on July 8, Plaintiff received an erroneous program review by Mr. Ray, Pine-A Lower Case Manager in Special Housing Unit." (Id., p. 22.) Plaintiff alleges that he "informed Mr. Ray that his review was supposed to be a custody review and that I was due for a custody review from Mr. Laugh from Pine A-Upper Unit Case Manager . . . but Mr Ray stated that he didn't care that he was having a program review." (Id.) Plaintiff further complains that placement in SHU resulted in living conditions that were "unequal in comparison with general population [and] not justified by security concerns." (Id., p. 16.) Specifically, Plaintiff states that placement in SHU: (1) "violated Plaintiff's participation in Bureau of Prison Programs (C.F.R. § 541.22(d));" (2) "prevented him from attending religious services, obtaining religious material, or religious counseling for over 6 months"; (3) resulted in

"extreme lower back pain from prolong utilization of seat and table" that were designed as a "torture device" because the seat was constructed 2 ½ feet off floor and the table was constructed 3 feet off floor; (4) improperly limited Plaintiff "to 2 hours of visitation pre visit from family and General Population was afforded 7 hours per visit"; and (5) violated Plaintiff's First Amendment rights by restricting his telephone access. (Id., pp. 16 - 18.) Plaintiff also alleges that he was assaulted while in SHU on October 27, 2009 (Id., p. 21.), and Mr. Tincher "was negligent and caused physical injury to Plaintiff by kicking Plaintiff in head while [he] lay face down with hands behind back waiting to be handcuffed in cell." (Id., p. 35.)

Plaintiff also complains that Defendants were transferring him to "a more dangerous prison", FCI Yazoo, Mississippi, in retaliation for filing his previous action and attempting to exhaust his administrative remedies. (Id., p. 24.) Plaintiff states that he can "not be transferred to southern States because of danger to Plaintiff's life . . . from a violent group, Texas Syndicate." (Id., pp. 24 - 25.) Plaintiff alleges that Defendants Hamrick, Snow, and Ray "failed to maintain accurate central inmate files and records," which resulted in "inaccurate security designation and custody classification." (Id., p. 26.) Plaintiff also asserts that Defendants refused to provide him with the proper administrative remedy forms. (Id., p. 27.) Plaintiff included a list of "Dates of Staff's notification and Campaign of Harassment." (Id., pp. 28 -31.) Accordingly, Plaintiff requested declaratory and injunctive relief respecting the violation of his constitutional rights and transfer and nominal, compensatory and punitive damages. (Id., pp. 37 - 41.)

Also on December 4, 2009, Plaintiff filed a Motion for Leave to File an Amended Complaint requesting leave to amend his Complaint to include additional Defendants. (Document No. 4, pp. 2 - 3.) Specifically, Plaintiff named the following as additional Defendants in their individual and

official capacities: (1) Shawn Laugh, Case Manager of Pine A-Upper; (2) Tim Painter, Unit Pine-A-Upper; (3) Ms. Bowman, Education Specialist; (4) Ms. Blankenship, Education supervisor; and (5) Mr. Farley, Supervisor of Education employees. (Id.)[4] In his Amended Complaint, Plaintiff includes additional allegations in support of his claims under the First, Fifth, and Eighth Amendments. (Id., pp. 3 - 24.) Specifically, Plaintiff complains that in retaliation for his filing administrative complaints, Ms. Bowman charged him with violations of prison regulations and as a consequence he was placed in SHU.[5] Plaintiff further complains that disciplinary proceedings upon Ms. Bowman's charges were not held within the time specified in BOP regulations. Plaintiff also alleged that Defendants Laugh and Painter manipulated his custody score and removed him from his cell and placing him in a 12-man cell.

By Orders filed on September 1, 2010, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 7.) and Motion for Leave to File an Amended Complaint (Document No. 8.), and the Clerk issued Summonses (Document No. 9.).

On January 24, 2011, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Memorandum in Support including exhibits. (Document Nos. 37 - 39.) Defendants assert as follows:

---

[4]  Plaintiff charges that Defendants Blankenship and Farley failed in their positions as supervisors. (Document No. 4, pp. 16 - 19.)

[5]  It is evident from documents which Plaintiff attached to his Motion that Plaintiff was charged in an Incident Report with possession of gambling paraphernalia and lying or providing a false statement to a staff member on October 9, 2008, in violation of the BOP's Code of Prohibited Acts. (Document No. 4 - 1 p. 17.) The Unit Disciplinary Committee determined that the alleged prohibited acts occurred and stated that "[t]he UDC has sanctioned you to loss of job for 12 months from the Education Department due to the trust your supervisors had in you in their department." (*Id.*) Plaintiff appealed the UDC's decision, and his appeal was denied. (*Id.*, p. 13.)

5

A.     Plaintiff's claims against them in their official capacities are barred by sovereign immunity (Document No. 38, pp. 2 - 3.).

B.     *Respondeat Superior* and supervisory liability are inapplicable in a <u>Bivens</u> action and therefore Plaintiff's claims with respect to Defendants Berkebile, Hamrick, Snow, Blankenship, Farley and Nash as supervisors of other Defendants must be dismissed (<u>Id.</u>, pp. 3 - 4.).

C.     Plaintiff's allegations that Defendants James and Stock and supervisors Nash, Berkebile and an unnamed Lieutenant failed to protect him from an assault by other inmates fail to state a claim. Defendants placed Plaintiff in protective custody on April 19, 2009, when Plaintiff notified them that three inmates had threatened him. Defendants determined that Plaintiff had not sustained any injury and conducted an investigation into the circumstances. Defendants determined that Plaintiff had probably been threatened and requested that Plaintiff be transferred to another facility. Plaintiff was held in protective custody until he was transferred to another facility on October 29, 2009. (Id., pp. 4 - 7.) Submitting the Declarations of Defendants James and Stock (Document No. 39, Exhibits 2 and 3.), Defendants further assert that Plaintiff's claims that on June 9, 2009, Defendant James insinuated that Plaintiff was an informant in the presence of other inmates, Defendants James and Stock denied him several meals while he was in SHU, and Defendant Tincher assaulted him on October 27, 2009, must be dismissed. (Document No. 38, pp. 7 - 11.)

D.     Plaintiff's complaints relating to his placement in SHU fail to allege any constitutional violations. (<u>Id.</u>, p. 11.) Defendants assert that "Plaintiff received SHU reviews on his 3rd day in SHU, every 7th day thereafter, and every 30 days while in SHU. * * * He was also reviewed by psychology staff every month while in SHU at FCI Beckley." (<u>Id.</u>, pp. 12 - 13.) Defendants further assert that restrictions/limitations upon religious services, materials and counseling, visitation and telephone access, uncomfortable tables and chairs and his having a program review instead of a custody classification review while he was in SHU in July, 2009, did not violate Plaintiff's constitutional rights. (<u>Id.</u>, pp. 13 - 16.)

E.     Plaintiff's complaints respecting retaliation, his transfer, his central file record keeping and administrative remedy procedures are not cognizable in <u>Bivens</u> claims. (<u>Id.</u>, p. 16.) Specifically, Defendants contend that (1) Plaintiff's retaliation claim fails because inmates have no constitutional right to an administrative remedy process and his right of access to the Court was not affected as is evident from his filing of his Complaint and Amended Complaint in this matter (<u>Id.</u>); (2) the BOP has discretion in determining where to hold inmates in custody and determined that Plaintiff should be

transferred for his own protection after a protective custody investigation (<u>Id.</u>, p. 17.); and (3) Defendants are not proper parties respecting Plaintiff's Privacy Act claim of impropriety in keeping records pertaining to his custody classification (<u>Id.</u>, pp. 17 - 18.)

F.     Plaintiff's allegation that he was issued a false incident report fails to state a constitutional claim. (<u>Id.</u>, pp. 18 - 19.) Defendants state that Plaintiff was charged in an Incident Report, had a UDC hearing and was found to have possessed gambling paraphernalia, a prohibited act. Thus, Defendants indicate, the charges were not false. Defendants further contend that even if they were, "there is no constitutional right to be free from being falsely accused." Defendants also argue that the failure to follow the procedure specified in BOP regulations for conducting disciplinary proceedings is not a violation of the right of due process.

G.     Defendants are entitled to qualified immunity. (<u>Id.</u>, pp. 19 - 21.) Defendants assert that they acted at all times within the scope of their duties and in doing so they did not violate any of Plaintiff's constitutional rights.

H.     Plaintiff's request for injunctive relief should be denied. (<u>Id.</u>, pp. 21 - 23.) Defendants contend that Plaintiff cannot succeed under the four factor balancing standard for the issuance of an injunction. Specifically, Defendants claim that Plaintiff cannot demonstrate that he will be irreparably harmed if an injunction is not issued because he has already been transferred and had a custody classification review. Defendants indicate on the other hand that harm would occur if the Court were to intervene in such matters in this case as the Court would override the BOP in them. Defendants further contend that Plaintiff cannot prevail on the merits of his claims "because he has failed to allege constitutional violations." Finally, Defendants assert that Plaintiff has not demonstrate that the public interest will be served by the issuance of an injunction.

Defendants attached the Declaration of K. Kincaid-Wimbish, a Special Investigative Services [SIS] Technician at FCI Beckley, as Exhibit 1 to its Memorandum in Support. SIS Technician Kincaid-Wimbish was assigned to investigate Plaintiff's request for protective custody and relates the investigative findings in the Declaration. SIS Technician Kincaid-Wimbish attached a copy of (A) FCI Beckley's Health Services assessment of Plaintiff's injuries on April 19, 2009; (B) Warden Berkebile's Request for Plaintiff's Transfer as recommended by his unit team and prepared by Case

7

Manager Ray; (C) a history of Plaintiff's housing assignments at several BOP facilities; (D) FCI

Beckley's Health Services assessment of Plaintiff's injuries on October 26, 2009; (E) The April 19,

2009, Administrative Detention Order that Plaintiff be admitted to administrative detention "[s]ince

the inmate has requested admission for protection[.]" and Special Housing Review forms indicating

the prison's monthly assessment of Plaintiff's continuation in SHU and psychological assessment;

(F) a form indicating Plaintiff's custody classification; and (G) an Incident Report charging Plaintiff

with prohibited acts, possession of gambling paraphernalia and lying or providing a false statement

to a staff member, in October, 2008, and indicating his penalty.[6] Defendants also attached the

Declarations of Senior Officer Specialist J. James, Correctional Counselor K. Stock, Chaplain M.

Temple and Case Manager J. Grider as Exhibit's 2 through 5 to Its Memorandum in Support. Senior

Officer Specialist J. James stated that "I am absolutely certain that I never called or insinuated inmate

Medrano . . . was an informant or 'snitch' to other inmates." He also stated that "I never denied

inmate Medrano any meals . . .." Correctional Counselor K. Stock stated that "I am certain that I

never denied inmate Medrano any meals . . .." Chaplain M. Temple explained that inmates in SHU

may participate in private worship and have religious counseling and these services were "available

to SHU inmates during the time period inmate Medrano was in SHU, from April 19, 2009, to October

29, 2009." Case Manager J. Grider stated that she was Plaintiff's Case Manager and reviewed and

discussed Plaintiff's security level/custody classification with him explaining that "his security level

is correctly scored as a 'medium.'"

      On January 24, 2011, the Court advised Plaintiff of his right to file a Response to Defendant's

Motion  pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and required that Plaintiff

---

[6] These documents include a copy of a handwritten two-column list of college football teams
entitled "New Money – NCAAF". (Document No. 39, p. 43.)

file his Response by March 7, 2011.  (Document No. 42.) Plaintiff has not filed a Response. Rather, on March 4, 2011, he filed a Motion for Continuance pursuant to Federal Rule of Civil Procedure 56(f). (Document No. 45.) Plaintiff stated that he "cannot properly oppose a motion for summary judgment without a chance to conduct discovery and/or obtain affidavits." (Id., p. 2.) Plaintiff requested that he be allowed to correspond with and obtain the affidavits of six inmates in support of his claims. (Id., pp. 3 - 4.) Plaintiff further indicated that he needed to take the depositions of the Defendants as they are in possession or control of information pertaining to his claims (Id., p. 5.) and requested the production of documents, photographs, videos and emails specifically respecting the circumstances which occurred on April 19 and October 27, 2009, his custody classification, Inmate Central File and his administrative requests for relief and more broadly respecting disciplinary and psychological reports respecting Defendants and reports respecting BOP staff harassment, assaults and false incident reports. (Id., pp. 6 - 9.). For reasons set forth in a separate Order filed along with this Proposed Findings and Recommendation, the undersigned denies Plaintiff's Motion for Continuance.

## THE STANDARD

### Motion to Dismiss Under Rule 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v.

Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. *See* Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d  340 (1992).

### Summary Judgment.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the

light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; <u>See</u> <u>also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. Thus, a plaintiff may bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. The allegation and proof of an actual injury and causation between the officials' conduct and the alleged injury is necessary for there to be liability. <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996)("A prisoner must also

11

identify an actual injury resulting from official conduct. Strickler v. Waters, 989 F.2d 1375, 1382 -

85 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) A showing of injury

is required in order to avoid trivial claims of deprivation."); White v. Gregory, 1 F.3d 267, 269 (4th

Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the Eighth

Amendment.")

An inmate may name a federal officer in an individual capacity as a defendant in alleging

a constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321,

115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States,

federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S.

471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th

Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Furthermore, "Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

of *respondeat superior*. * * * Because vicarious liability is inapplicable to Bivens . . ., a plaintiff

must plead that each Government-official defendant, through the officials own individual actions,

has violated the Constitution." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d

868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045

, 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability.

* * * Instead, liability is personal, based upon each defendant's own constitutional violations."

(Citation omitted.)). Liability can be premised, however, "on a recognition that supervisory

indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the

constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368,

372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is therefore not enough. Rather, Bivens liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

Federal officials sued under Bivens may assert qualified immunity as a defense. Federal officials performing discretionary functions are generally protected from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the United States Supreme Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818. In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Court specified a two-step process for considering qualified immunity claims stating

that "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. * * * If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." The Court recently relaxed this standard in Pearson v. Callahan, 555 U.S. 223, 236 - 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") Importantly, issues of qualified immunity should be resolved "at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. at 232, 129 S.Ct. at 815, quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

### A.  Plaintiff's Official Capacity and Failure to Supervise Claims.

Considering the applicable standards and law summarized above, Plaintiff's official capacity claim against the Defendants clearly fails to state claims for which relief can be granted and should be dismissed. Likewise, Plaintiff's failure to supervise claims against Defendants Berkebile, Nash, Hamrick, Snow, John Doe, Blankenship and Farley must be dismissed as generally they may not be held accountable for the actions of those Defendants whom they supervise as a matter of law and it is not evident that they intentionally ignored or condoned any unconstitutional conduct by their subordinates.

**B.      Plaintiff's Claims of Constitutional Violations.**

**1.      Plaintiff's Placement in Administrative/Protective Custody.**

The Eighth Amendment protects prisoners against "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to be free from conditions of confinement that impose "an excessive risk to [the] inmate['s] health and safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); see also Hathaway v. Coughlin, 37 F.3d 63,66 (2d Cir. 1994). The Eighth Amendment comprises both an objective and subjective component. See Wilson, supra, 501 U.S. at 298, 111 S.Ct. at 2324. In cases where an inmate alleges failure to protect against and prevent harm, the inmate must allege and establish that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) officials displayed "deliberate indifference" to his health or safety. See Farmer, supra, 511 U.S. at 834, 114 S.Ct. at 1977. To establish the subjective component of deliberate indifference, the inmate must allege and prove each Defendant's consciousness of the risk of harm to the inmate. Id. at 840; Hudson v. McMillan, 503 U.S. 1, 8, 112 S.Ct. 995, 999 - 1000, 117 L.Ed.2d 156 (1992). In particular, the inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114

15

S.Ct. 1970, 1976, 128 L.Ed. 2d 811 (1994) (citation omitted, alteration in original). When an inmate is threatened by other inmates, prison officials may place the threatened inmate in segregation for his or her own protection.[7]

Eighth Amendment considerations arise when an inmate is held in segregation for a prolonged period of time. In <u>Sweet v. South Carolina Dept. of Corrections</u>, 529 F.2d 854 (4th Cir. 1975), the Fourth Circuit considered the appeal of an inmate who had been confined for five years in segregation for his own safety and requested, among other things, more opportunities to work and exercise and "other inmates to converse with." <u>Id.</u>, at 858 - 859. The Court summarized the law as it stood at the time as follows:

> '[I]solation from companionship,' 'restriction on intellectual stimulation and prolonged inactivity', inescapable accompaniments of segregated confinement, will not render segregated confinement unconstitutional absent other illegitimate deprivations. Nor will the fact that the segregated confinement is prolonged and

---

[7] BOP regulations respecting placing inmates in administrative/protective detention are set forth at 28 C.F.R. §§ 541.22 and 541.23. Section 541.22(a) provides that an inmate may be placed in such detention when

> the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:
>
> * * *
>
> (4) Is pending transfer;
> (5) Requests admission in administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection;
> (6) Is terminating confinement in disciplinary segregation and placement in general population is not prudent. The Segregation Review Official is to advise the inmate of this determination and the reasons for such action.

Section 541.22(b) requires the issuance of an administrative detention order and its delivery to the inmate and Section 541.22(c) provides for periodic status and psychological reviews of inmates held in administrative detention.

indefinite be sufficient in itself to command constitutional protection, though it is a factor to be considered, especially if the confinement is punitive rather than administrative or protective. Whether prolonged or indefinite duration may offend constitutional standards will depend on whether the above standards of confinement are observed, and whether the confinement 'bear(s) some reasonable relation to the purpose for which the individual is committed.'

Id., at 861, footnotes omitted. The Court of Appeals affirmed the District Court's decision and remanded the case on the issue whether the inmate's claims that he was denied adequate exercise and adequate opportunity to shower were cognizable under the Eighth Amendment. Id., at 865 - 866. Citing Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565, 2571 - 72, 57 L.Ed.2d 522 (1978) and Sweet, supra, the Fourth Circuit stated in In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999), that "length of time is 'simply one consideration among many' in the Eighth Amendment inquiry." The conditions of the confinement are also an important consideration. Hutto, 437 U.S. at 685 - 87, 98 S.Ct. at 2571.

Due process is also implicated when an inmate is designated to segregation for a prolonged and indefinite period of time. In Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983), the United States Supreme Court found that under State statutes and regulations, inmate Helms had "a protected liberty interest in remaining in the general prison population." Id., 459 U.S. at 470 - 471, 103 S.Ct. at 871. The Supreme Court noted that some process is required when an inmate is place in administrative segregation for a prolonged or indefinite term stating that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." The Court stated further as follows:

Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision . . . will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the

officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner. * * * [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations . . .

Id. The Supreme Court withdrew from the methodology prescribed by Hewitt focusing upon determining whether the State had created a protected liberty interest in Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[8] The Supreme Court stated in Sandin that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483 - 484, 115 S.Ct. at 2300. The Court held that an inmate's confinement in disciplinary segregation for one month did not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life and thus did not establish a liberty interest sufficient to invoke a right to due process entitling the inmate to the procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 .Ed.2d 935 (1974). Sandin, 515 U.S. at 487, 115 S.Ct. at 2302. Thus, an inmate's assignment to administrative segregation, without more, does not deprive him of a constitutionally cognizable liberty interest, and length of time that segregation is imposed remains a factor which Courts must consider in determining whether conditions constitute a significant and atypical hardship.

BOP Special Investigative Services [SIS] Technician K. Kincaid-Wimbish indicates that Plaintiff informed prison staff that his life was threatened on April 19, 2009, and Plaintiff was promptly medically examined and "placed in SHU for his protection, pending a protective custody

---

[8] The Supreme Court clearly indicated in *Sandin* that it was not overruling *Hewitt*. *Sandin*, 515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n. 5.

investigation." (Document No. 39, pp. 2 - 3, ¶¶ 5 - 8.) At the conclusion of the investigation in mid-August, 2009, it was determined that Plaintiff "had likely been threatened on April 19, 2009, though he was not injured." (Id., p. 3, ¶ 9.) Plaintiff's transfer to another institution was recommended. (Id., ¶ 10.) SIS Technician K. Kincaid-Wimbish further states that on October 26, 2009, while Plaintiff was in SHU, he was assaulted by another inmate over a petty matter. (Id., pp. 3 - 4, ¶¶ 14 - 19.) Plaintiff was transferred from FCI Beckley on October 29, 2009. (Id., p. 3. ¶ 13.) Plaintiff was therefore in SHU for 194 days. Copies of documents attached as exhibits to the Declaration of K. Kincaid-Wimbish indicate that during that time special housing reviews (Id., pp. 18 - 25.) and psychological reviews (Id., pp. 26 - 36.) were conducted approximately every thirty days.

The undersigned finds no violation of Plaintiff's Eighth or Fifth Amendment rights in Plaintiff's placement in segregation between April 19 when he reported that he was threatened by other inmates and October 29, 2009, when he was transferred to another institution. Plaintiff was clearly placed in segregation for his own protection, and during his 194 day confinement there, prison officials regularly conducted status and psychological reviews substantially in conformity with BOP regulations. While Plaintiff may have been subject to some restrictions while in segregation, it is not evident that his confinement in segregation constituted a significant or atypical hardship in relation to the ordinary incidents of prison life.

### 2.    Plaintiff's Complaints About Conditions in SHU.

"The Eighth Amendment . . . not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118,

125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See also* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), *quoting* Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation); The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), *citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that

'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)(*quoting* <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). *See also* <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") In <u>White v. Gregory</u>, the Fourth Circuit affirmed Chief Judge Haden's summary dismissal of an inmate's claim under the Eighth Amendment where the inmate claimed that he only received two meals a day on weekends and holidays and admitted that he received three meals a day on weekdays and did not claim any deleterious physical or mental effects from the meal schedule.

Plaintiff complains that the tables and chairs in SHU were uncomfortable, some meals were withheld, he did not have access to religious services and his visitation and use of the telephone were restricted. Defendants address most of Plaintiff's allegations in their Declarations. Taking Plaintiff's allegations as true though they are substantially refuted through Defendant's Declarations, the undersigned finds that none of the matters about which Plaintiff complains were sufficiently serious deprivations to amount to violations of Plaintiff's Eighth Amendment rights. There is further no indication that Plaintiff suffered any serious physical or mental injury as a consequence of the alleged circumstances and restrictions. The undersigned finds therefore that the circumstances and restrictions about which Plaintiff complains are not of constitutional magnitude.

### 3. <u>Insinuating That Plaintiff was in Protective Custody as a Snitch or Informant.</u>

Several Circuit Courts of Appeals have held that labeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees. *See* <u>Benefield v. McDowall</u>, 241 F.3d 1267

(10th Cir. 2001); Miller v. Leathers, 913 F.2d 1085, 1088 at fn. 1 (4th Cir.1990)("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984); Gullate v. Potts, 654 F.2d 1007, 1012 (5th Cir. 1981).

Plaintiff alleges that on June 9, 2009, Defendant James acted with deliberate indifference to his safety when he stated in response to Plaintiff's question about his meals "there is more food on compound mainline. What are you going to do, sue for your meal too, you scary dude?" Plaintiff appears to allege that by this statement, Defendant James insinuated to other inmates that Plaintiff was in protective custody potentially as a snitch or informant. Nothing, however, in the statement implies that Plaintiff was a snitch or informant. Rather, it implies that Plaintiff had filed a lawsuit. As noted above, Plaintiff had filed a lawsuit on May 18, 2009, alleging that he had been assaulted by two inmates and was placed in segregation for his own protection. It does not appear from the circumstances which Plaintiff has alleged that Defendant James said anything on June 9, 2009, which placed Plaintiff's safety in jeopardy. It is not evident that Defendant James disclosed the reason why Plaintiff was in segregation. Moreover, Plaintiff does not indicate that other inmates understood that he was a snitch or informant from Defendant James' statement and assaulted or harassed him. Plaintiff's claim in this regard is therefore clearly without merit.

### 3. Custody Classification and Transfer.

It is well settled that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification which is sufficient to invoke due process. Moody v. Doggett, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236(1976). Thus, inmates do not have a

property or liberty interest in custodial classifications. Such classifications are generally within the broad discretion of prison officials' administration and management, and Courts are reluctant to interfere except in extreme circumstances such as when the classification results in the deprivation of a constitutional right. Likewise, inmates have no constitutional right to be incarcerated in any particular institution, and prison officials have discretion in deciding to transfer them to which the Courts defer. Meachum v. Fano, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976)("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.") Plaintiff's allegations respecting Defendants' determination of his custody classification and decision to transfer him to another institution do not indicate any abuse of discretion, and no deprivation of a constitutional right is evident. Plaintiff's claims respecting his custody classification and transfer do not present issues of a constitutional nature which might be considered under Bivens.

### 4.    Plaintiff's Allegation of Retaliation.

To prevail on a claim of retaliation, Plaintiff must demonstrate "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022, 115 S.Ct. 1371, 131 F.2d 227 (1995). Bare assertions of retaliation however, do not rise to the level of a constitutional violation. *See* Adams, 40 F.3d at 74; White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Plaintiff claims that Defendants retaliated against him for filing administrative grievances and lawsuits by charging him with violations of prison regulations, placing him in SHU, manipulating

his custody classification and transferring him to another institution. It is clearly evident, however, that Plaintiff actually committed prohibited acts by possessing gambling paraphernalia and lying or providing a false statement to a staff member on October 9, 2008, in violation of the BOP's Code of Prohibited Acts. Plaintiff had no constitutional right to any particular custody classification or place of incarceration. It is therefore not evident that Defendants violated Plaintiff's constitutional rights or retaliated in response to his exercise of a constitutional right as Plaintiff claims.

      **C.**     **<u>Qualified Immunity</u>.**

Because it is evident that Defendants committed no violation of any firmly established constitutional right as Plaintiff has alleged, Defendants are entitled to qualified immunity.

### <u>PROPOSAL AND RECOMMENDATION</u>

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment Motion (Document No. 37.), **DISMISS** this matter and **REMOVE** it from the Court's docket.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court,

written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 10, 2011.

R. Clarke VanDervort
United States Magistrate Judge